# United States Court of Appeals for the Federal Circuit

---

**KATHRYN KING,**
*Petitioner,*

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent,*

AND

**DIANA M. KING,**
*Intervenor.*

---

2012-3061

---

Petition for review of the Merit Systems Protection Board in No. DE831M090077-B-1.

---

Decided: September 13, 2013

---

MATTHEW J. DOWD, Wiley Rein LLP, of Washington, DC, argued for Petitioner. With him on the brief was FLOYD B. CHAPMAN.

NICHOLAS J. JABBOUR, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respond-

ent.   With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director.   Of counsel on the brief was JESSICA S. JOHNSON, Attorney Advisor, Office of General Counsel, Office of Personnel Management, of Washington, DC.

DIANA M. KING, of Meridian, Idaho, pro se.

---

Before RADER, *Chief Judge,* O'MALLEY, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

Kathryn King ("Kathryn") appeals the November 10, 2011 final order of the Merit Systems Protection Board ("Board") that she was not entitled to a waiver of recovery of survivor annuity benefits.   We *reverse* the Board's decision denying a waiver of recovery because the Board failed to credit substantial evidence demonstrating, in accordance with 5 C.F.R. § 831.1403, that Kathryn detrimentally relied on the overpayment of survivor annuity funds.

## BACKGROUND

This appeal is bound up with the marital history of former United States Forest Service employee Don King ("Don") with two separate women, both of whom claimed to be his wife, and both of whom claimed federal survivor benefits upon his death.   Don first married Diana King ("Diana") in 1967.   Don and Diana later divorced in 1980 and remarried in 1981.   A year and a half later, their second marriage again ended in divorce, but Don and Diana continued their relationship and shared a home with their two children.   Although Don and Diana filed separate tax returns and listed their marital status as "single," they held themselves out to the community as husband and wife, including sharing household duties,

maintaining joint credit card accounts, and celebrating anniversaries of their original marriage.

In 2002, Don moved out of the home he shared with Diana and married the appellant, Kathryn, in a civil ceremony. During Don's marriage to Kathryn, he was treated for cancer, and Kathryn incurred the costs for Don's medical bills and end-of-life treatment. Don passed away from cancer on May 26, 2004, but prior to his death he designated Kathryn to receive his lump-sum accrued federal annuity.

Kathryn and Diana both claimed to be Don's legal wife at the time of his death. Specifically, Kathryn believed she had married Don in a civil ceremony in 2002. Diana maintained that she was the common law wife of Don at the time he married Kathryn. Prior to Don's death, Diana had initiated legal proceedings in the Montana Twenty-First Judicial District Court ("the Montana court") to dissolve her common law marriage to Don. After Don's death, the case in the Montana court evolved into extensive litigation over the division of Don's estate including, as relevant here, the allocation of his federal annuity from the Civil Service Retirement and Disability Fund. In August 2004, Kathryn became a party to the litigation and moved to dismiss Diana's petition for dissolution of a common law marriage on the basis that Kathryn was Don's legal wife.

On June 15, 2004, with the marriage issue still unresolved, Kathryn and Diana executed a handwritten settlement agreement ("the 2004 Settlement Agreement") in which Kathryn stipulated to Diana's claim that Diana and Don had a common law marriage and further agreed to assign to Diana any rights Kathryn had in Don's retirement and insurance policies. J.A. 68. Specifically, paragraph 4 stated: "If Kathy should receive any retirement disbursements from Don's retirement, then such payments shall be the property of Diana *or* returned to the

government for disbursement to Diana." *Id.* (emphasis added). In turn, Diana agreed to pay Kathryn $50,000 and to assume Don's outstanding medical and funeral expenses. *Id.*; J.A. 216.

After signing the 2004 Settlement Agreement, Kathryn changed her mind and requested that the Montana court vacate the agreement as unconscionable and unenforceable. Diana responded by seeking to enforce the agreement and seeking damages for breach of contract. During the pendency of the litigation over the 2004 Settlement Agreement, Kathryn filed an application with the Office of Personal Management ("OPM") for survivor annuity funds as Don's lawful wife. OPM commenced payment of the survivor annuity funds to Kathryn for a period beginning on May 27, 2004, and continued to make these payments until late February 2007.

In July 2005, the Montana court ruled that the 2004 Settlement Agreement was a valid and enforceable contract that deprived Kathryn of a right to contest the common law marriage of Don and Diana. In November 2006, Diana filed for survivor annuity funds from OPM, attaching to her application an affidavit attesting to the validity of her common law marriage to Don, a copy of the 2004 Settlement Agreement, and a copy of the Montana court's determination that the agreement was valid and enforceable. Based on Diana's filings, OPM revoked payment of survivor annuity funds to Kathryn and awarded the benefits to Diana.

Thereafter, Kathryn and Diana entered into a second settlement agreement on February 1, 2008 ("the 2008 Settlement Agreement"). Under the terms of the 2008 Settlement Agreement, Kathryn released any claim to any payment due to her under the 2004 Settlement Agreement—including reimbursement for the cost of Don's medical and funeral expenses—and similarly waived any claim for reimbursement of payments made

by Kathryn to Diana, including Don's pension benefits or insurance proceeds. J.A. 72. Diana also waived certain rights, including all claims for attorneys' fees from the earlier proceedings and "all claims to any future pension payment that Kathryn King may receive from the U.S. Government." *Id.*

To determine whether Kathryn or Diana were entitled to Don's survivor annuity benefits, OPM requested a declaration from the Montana court on Don's marital status at the time of his death. On February 7, 2008, pursuant to stipulated findings of fact, the Montana court decreed that Diana was "the lawful common law wife of Donald C. King . . . from approximately 1984 to the time of his death on May 26, 2004." J.A. 188. The Montana court declared that Don's marriage to Kathryn was "void as a matter of law," and found that Diana was entitled "to all rights, benefits, and privileges commensurate with her status as Don's lawful spouse." *Id.* On April 13, 2009, the Montana court dismissed the action between Kathryn and Diana with prejudice.

Upon receiving the Montana decree, OPM made a final determination that Diana was eligible for the survivor annuity benefits and it paid Diana the full annuity amount (less taxes).[1] By then, Kathryn had transferred to Diana the survivor annuity funds that she received from OPM, believing this to be in accordance with the provisions in the 2004 Settlement Agreement and the 2005 ruling of the Montana court. Specifically, between January 2005 and March 2007, Kathryn deposited a total of $42,442.29 into a trust account for the benefit of Diana. J.A. 321-27.

---

[1] OPM paid Diana $48,303.27 for the retroactive period of May 27, 2004, to February 28, 2007, and $22,297.82 for the period of June 1, 2007, to December 1, 2008.

PROCEDURAL HISTORY

Based on the 2008 Montana decree, OPM determined that Diana was Don's survivor and that the money paid to Kathryn was an overpayment. As a result, it sought to recover $41,939.13 from Kathryn.

Kathryn, through her representative, did not dispute that she received annuity payments, but she challenged OPM's effort to recover the money on the basis that she had transferred the monies received to Diana. Kathryn submitted court documents in support of her assertion that the transfer of funds occurred pursuant to court order, and she argued that OPM should seek refund of the overpayment from Diana. After treating Kathryn's submissions as a request for reconsideration, OPM affirmed its overpayment decision and further determined that collection of the $41,939.13 would not cause Kathryn financial hardship.

Kathryn appealed OPM's decision to the Board. On March 24, 2009, an Administrative Judge issued an initial decision affirming OPM's findings regarding the overpayment because Kathryn did not meet the definition of the term "widow" under the Civil Service Retirement Act, 5 U.S.C. § 8341(A)(1), and had not proved by substantial evidence that she was entitled to waiver for the overpayment. The Administrative Judge acknowledged that Kathryn was without fault in causing the overpayment, but was not satisfied that recovery would be against equity and good conscience. In denying waiver of the overpayment, the Administrative Judge rejected both a theory of detrimental reliance and unconscionability.

The full Board reviewed the Administrative Judge's initial decision and reopened the appeal on its own motion to consider the newly-augmented record.[2] *See King v.*

---

[2] The Board had accepted additional evidence that included copies of the settlement agreements as well as

*Office of Pers. Mgmt.*, 114 M.S.P.R. 181, 187 (2010). The Board remanded the case for the Administrative Judge to evaluate whether supplemental evidence demonstrated that the money Kathryn paid into trust for Diana represented the funds Kathryn received from OPM for the time period at issue, and whether exceptional circumstances warranted waiver of repayment. *See id.* at 191-92.

On remand, the Administrative Judge conducted an accounting of the survivor annuity funds OPM paid to Kathryn and Diana. The Administrative Judge found that Kathryn transferred to Diana $33,563.94[3] of the $41,939.13 she received from OPM, which resulted in Diana receiving both OPM survivor annuity funds *and* additional monies paid to her by Kathryn. Notwithstanding the transfer of funds to Diana, the Administrative Judge ruled that Kathryn was not entitled to a waiver of recovery of the overpayment because Kathryn had not demonstrated that OPM's recovery of the overpayment would be against equity and good conscience as required under 5 U.S.C. § 8470(b). *See* J.A. 29-31.

The full Board evaluated Kathryn's appeal a second time and issued a final, split decision on November 10, 2011. *See generally Office of Pers. Mgmt.*, DE-831M-09-0077-B-1 (M.S.P.B. Nov. 10, 2011). The two member majority affirmed the denial of waiver, finding that Kathryn's repayment of the survivor annuity funds to OPM was not unconscionable or manifestly unfair in light of the "settlement agreements and litigation history." J.A. 6. In support of its ruling, the majority read the 2004

---

financial documents such as tax records that related to the transfer of funds from Kathryn to Diana.

[3]  The Administrative Judge found that Kathryn deposited a total of $42,442.29 into Diana's trust account, of which $33,563.94 represented annuity funds and the remainder consisted of life insurance proceeds.

Settlement Agreement as obligating Kathryn to reimburse the government because paragraph 4 recites: "If Kathy should receive any retirement disbursements from Don's retirement, then such payments shall be the property of Diana and shall be turned over to Diana or turned to the government for disbursement to Diana." J.A. 68.

In dissent, Vice Chairman Wagner disagreed with the majority's reading of the 2004 Settlement agreement. In her view, the parties never intended that Kathryn would be required to pay Don's retirement disbursements to Diana *and* to refund the same amounts to OPM. Rather, given the "unusual situation" presented in this case and the disjunctive "or" employed in the actual agreement, Kathryn's transfer of funds to Diana should negate recovery by OPM: "[t]he use of the disjunctive 'or' . . . clearly shows that the parties' unambiguous intent was that, in the event [Kathryn] received any federal retirement benefit based on Mr. King's service, she would pay either [Diana] *or* return the funds to OPM to pay the intervener." J.A. 15 (emphasis added). The dissent rejected the suggestion that either settlement agreement showed that Kathryn assumed full liability for any overpayment of survivor annuity benefits, and weighed the equities to conclude that there was justification for waiving Kathryn's repayment to OPM. J.A. 17–18.

An appeal to this court followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

STANDARD OF REVIEW

This court may reverse a decision of the Board only if the decision is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c); *Hernandez v. Office of Pers. Mgmt.*, 450 F.3d 1332, 1334 (Fed. Cir. 2006); *Hayes v. Dep't of Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984).

Discussion

OPM administers the payment of survivor annuities from the Civil Service Retirement and Disability Fund, and may recover an overpayment made to an individual who is not entitled to the benefits.[4]  *See* 5 U.S.C. §§ 8347(a), 8348(a); 31 U.S.C. § 3711(a)(1).  In certain circumstances, recovery of an overpayment may be waived when the individual is without fault and recovery would be "against equity and good conscience."  5 U.S.C. § 8470(b); 5 C.F.R. § 831.1401.  The OPM regulations specify that recovering the overpayment is "against equity and good conscience" when:

a)  It would cause financial hardship to the person from whom it is sought;

b)  The recipient of the overpayment can show (regardless of his or her financial circumstances) that due to the notice that such payment would be made or because of the incorrect payment either he/she has relinquished a valuable right or has changed    positions for the worse; or

c)  Recovery could be unconscionable under the circumstances.

5 C.F.R. § 831.1403; *see also Spinelli v. Office of Pers. Mgmt.*, 109 M.S.P.R. 185, 188 (2008).

In its *OPM Policy Guidelines on the Disposition of Overpayment Under the Civil Service Retirement System*

---

[4]  In general, survivor annuity benefits are paid to the widow of a qualifying federal employee as defined in 5 U.S.C. § 8341(a)(1).  This court has defined "widow" under the statute as "the surviving wife who was married to the employee when he died."  *Money v. Office of Pers. Mgmt.*, 811 F.2d 1474, 1477 (Fed. Cir. 1987) (citing statute).

*and Federal Employees' Retirement System ("OPM Over-payment Guidelines"),* OPM clarifies the appropriate burden shifting that must occur to waive recovery of overpayment.[5]  First, OPM bears the burden of proving an annuity overpayment by a preponderance of the evidence.  5 C.F.R. § 831.1407(a); *OPM Overpayment Guidelines* § I.G.1.  The burden then shifts to the recipient of the overpayment to prove, by substantial evidence, that waiver is appropriate.[6]  5 C.F.R. § 831.1407(b); *OPM Overpayment Guidelines* § I.G.2.  OPM then has an opportunity to counter that the waiver is not supported by substantial evidence.  *OPM Overpayment Guidelines* § I.G.2.

## A.  Findings Regarding the Recipient's Fault

We begin by assessing whether Kathryn carried her burden in establishing entitlement to waiver of recovery. As an initial step, we note that the record supports the Administrative Judge's finding that Kathryn was not at fault.  J.A. 55.  In particular, OPM paid the survivor annuity funds to Kathryn from May 2004 until February 2007, yet it was not until February 2008 that the Mon-

---

[5]  The Board endorses the *OPM Overpayment Guidelines* as reasonable, proper, and entitled to great deference.  *See Aguon v. Office of Pers. Mgmt.*, 42 M.S.P.R. 540, 546−47 (1989); *Kimsey v. Dep't of the Interior,* 24 M.S.P.R. 528, 532 (1984) (affording deference to an administrative agency's interpretation of its own regulation unless the interpretation is plainly erroneous or inconsistent with the applicable statute or regulation).

[6]  Substantial evidence is defined as the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree.  *Hunter*, 109 M.S.P.R. at 518 (citing 5 C.F.R. § 1201.56(c)(1)).

tana court ruled on the validity of her marriage to Don. Thus, Kathryn received the survivor annuity funds during a period when she believed she was the widow of Don King. OPM does not contradict the sequence of these events and we conclude that the Administrative Judge was correct in concluding that Kathryn was without fault in causing the overpayment.

We next turn to the Board's determination that recovery of the overpayment from Kathryn would not be "against equity and good conscience."

### B. Detrimental Reliance

The Administrative Judge expressly rejected Kathryn's detrimental reliance arguments, stating that there was "no evidence that [Kathryn] changed positions or relinquished a valuable right based on either the incorrect payment or OPM's notice that payments would be made." J.A. 56. The Board chose not to address the Administrative Judge's findings on detrimental reliance, but it fully considered the March 24, 2009, and October 19, 2010, decisions and found that "the administrative judge made no error in law or regulation that affects the outcome." J.A. 11; *see also* J.A. 47. We disagree.

Kathryn contends that the Administrative Judge and the Board overlooked record evidence establishing that she changed positions for the worse because, had she not received the survivor annuity funds, she would not have set aside and transferred those monies to Diana. Kathryn maintains that the transfers to Diana were material and irrevocable under the settlement agreements, and that she presented substantial evidence that after receiving the survivor annuity funds, she detrimentally relied on the overpayment.

OPM asserts that detrimental reliance is not applicable because Kathryn was "on notice" that "OPM might retract [the survivor annuity funds] and require her to

repay." Appellee Br. 30 (quoting the Board's Final Decision). OPM maintains that because Kathryn acknowledged in the 2004 Settlement Agreement that she was not Don's wife, the transfer of funds to Diana was caused by Kathryn's own uninformed decision, not the overpayment from OPM. OPM also presents a secondary argument that Kathryn's change in position is not irrevocable because she still has the opportunity to pursue legal action in state court to recover the annuity payments from Diana.

To establish detrimental reliance of an overpayment, the recipient must show that "due to the notice that such payment would be made or because of the incorrect payment he or she either has relinquished a valuable right or has changed positions for the worse." 5 C.F.R. § 845.303(b). The financial circumstances of the recipient—*i.e.*, the ability to repay the overpayment debt—are not relevant to a detrimental reliance determination. *See id.*; 5 C.F.R. § 831.1403(a)(2). In evaluating detrimental reliance claims, the Board has applied criteria from section I.E.3 of the *OPM Overpayment Guidelines*. OPM advises that waiver is justified when the change in position or loss of a valuable rights is:

a) directly caused by the overpayment or notice that such payment would be made (*i.e.*, loss or change would not have otherwise occurred);

b) detrimental to the overpayment recipient;

c) material (*i.e.*, significant enough to warrant the waiver); and

d) irrevocable (*i.e.,* the forfeited right cannot be recovered, the change in position cannot be reversed).

*OPM Overpayment Guidelines* § I.E.3; *see also Hunter*, 109 M.S.P.R. at 519 (citing *Alexander v. Office of Pers. Mgmt.*, 58 M.S.P.R. 358, 364−65 (1993)). Contrary to the

Board's determination that detrimental reliance was not supported by substantial evidence, the record evidence demonstrates substantial evidence supporting each element of detrimental reliance and that waiver of recovery for the annuity overpayment is warranted.

## 1. Change in Position for the Worse

Kathryn has demonstrated that receipt of the overpayment was detrimental because, without a finding of waiver, Kathryn would be in a worse financial position than if she had never accepted the survivor annuity funds. The record bears out her net loss:

- From May 2004 until late February 2007, OPM paid Kathryn $41,939.13 in survivor annuity funds.

- Pursuant to a court decree and settlement agreement requiring Kathryn to transfer to Diana any annuity funds or return them to OPM, Kathryn paid Diana $33,563.94 of the $41,939.13.

- OPM now seeks to recover the full $41,939.13 from Kathryn without taking into account the funds she remitted to Diana.

If Kathryn were required to return the full amount of survivor annuity funds to OPM, she would suffer a net loss of $33,563.94. The record on this point is undisputed. Because returning the annuity funds to OPM would ultimately place Kathryn in a worse financial position than if she had never received the funds, the first element of detrimental reliance is supported by substantial evidence.

## 2. Causation

Kathryn argues that her change in position was directly caused by the overpayment because, if not for the overpayment, she would not have transferred any money

to Diana. Kathryn explains that the transfer of funds to Diana was an acknowledgement that she might have received Don's retirement benefits in error, and she relinquished those benefits to the individual ultimately named as the lawful beneficiary by the Montana court. Under this theory, Kathryn's changed position was directly caused by the overpayment; that is, had Kathryn not received the OPM funds, she would not have assumed an obligation under the 2004 Settlement Agreement and the 2005 decree from the Montana court, and remitted the $33,563.94 to Diana.

OPM asserts that the transfer to Diana represents payment of debts or obligations arising from the 2004 or 2008 Settlement Agreements. OPM contends that Kathryn transferred the funds because she believed she was obligated to pay off an outstanding debt as consideration to end of the litigation and not as a result of the overpayment or notice thereof. Hence, OPM reasons that because payment of existing debts or obligations is not detrimental, Kathryn failed to satisfy the elements of detrimental reliance. The Board, while not expressly analyzing a theory of detrimental reliance, agreed with OPM that Kathryn's transfer to Diana should be viewed as payments meant to settle debts arising from the litigation in the Montana court. We find the Board's reasoning erroneous.

The record before us is unclear as to why Kathryn transferred the overpayment to Diana, but there is no dispute that such a transfer did occur. Under the correct legal framework, Kathryn needed only to show that it was *reasonable to conclude*, based on the timeline and record evidence, that the funds transferred to Diana were the overpayment funds she received from OPM.[7] *Crawford v.*

---

[7] The *OPM Overpayment Guidelines* advise that proof of detrimental reliance, including whether the overpayment directly caused the recipient to change

*Dep't of the Army*, 718 F.3d 1361, 1365 (Fed. Cir. 2013) ("Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

We find Kathryn's explanation for the transfer of funds to Diana to be reasonable and supported by substantial evidence. On April 10, 2008, Kathryn sent OPM documentation illustrating that she transferred funds representing Don's retirement benefits pursuant to court order. *See* J.A. 86. She reiterated this position in a follow up letter to OPM, in which Kathryn stated that "payment of the full amount due [of overpaid survivor benefits] had already been remitted to Diana King." J.A. 85. Kathryn's 2008 correspondence with OPM is consistent with the timeline of events, language of the settlement agreements, tax filings, and modest income levels,[8] indicating that the overpayment was the direct cause of her loss.

### 3. Materiality

We also agree with Kathryn that the transfer of funds to Diana was material. Kathryn's limited financial resources are illustrated in her individual tax returns. From

---

positions for the worse, should be provided in the form of "facts, evidence, and reasonable explanations supporting [the recipient's] assertions." *OPM Overpayment Guidelines* § I.E.7.

[8] Kathryn represents to this court that the monetary transfer to Diana was "more than Kathryn's annual income for each of the years 2005 and 2006." Appellant Reply Br. 10 (citing J.A. 237−48). While detrimental reliance does not account for the recipient's financial circumstances, the comparison between Kathryn's annual income and the amount transferred to Diana bears upon the reasonableness of her contention that the change in position was directly caused by the overpayment.

the years 2005 through 2007, her adjusted gross annual income never exceeded $22,000, yet during this period she remitted to Diana funds that exceeded her annual income. Because OPM does not contest that the transfer of funds to Diana was material, we find that Kathryn has satisfied the third element of detrimental reliance.

### 4. Irrevocability

As with the first three elements of detrimental reliance, the Board did not analyze whether Kathryn's change in position was irrevocable. OPM argues to the court that, even if there was a change in position, Kathryn is not entitled to a waiver because she can pursue necessary relief in the Montana court by suing Diana for recovery of the transferred funds. Kathryn argues that her change in position is irrevocable because the Montana court entered a final judgment and dismissed the earlier litigation with prejudice (*i.e.*, she is foreclosed from seeking relief from Diana).

Under the *OPM Overpayment Guidelines*, an irrevocable position is a "change in position [that] cannot be reversed." *OPM Overpayment Guidelines* § I.E.3. OPM claims that Kathryn's loss can be reversed through additional litigation between Kathryn and Diana. We disagree.

This case involves two women with a shared, extensive litigation history. After years of disputing the allocation of Don's assets and sorting claims as to which woman qualified as the lawful widow, the 2008 Settlement Agreement fully settled all claims. Pursuant to Kathryn and Diana's joint stipulation, the state court dismissed the action with prejudice. At oral argument, the parties acknowledged that, in order for Kathryn to seek the relief proposed by OPM, she would have to move under Rule 60(b) to set aside the settlement agreements and reopen the litigation. *See* Fed. R. Civ. P. 60(b).

We have considered the uncertainty that would accompany an attempt to obtain relief under Rule 60(b) under the circumstances and conclude that the transfer of funds is irreversible for purpose of detrimental reliance. It is improbable that the Montana court would grant a request to reopen the settled case. In addition, the parties would be encumbered with the burden and cost of litigating an issue that is unlikely to yield actual relief. The dismissal of the Montana action with prejudice and the execution of a settlement agreement intended to end all litigation between Kathryn and Diana render Kathryn's change in position irreversible. Having established that the transferred survivor annuity funds cannot feasibly be recovered from Diana, Kathryn has satisfied the fourth detrimental reliance element.

\* \* \*

The record before this Court demonstrates substantial evidence that Kathryn is entitled to a waiver of recovery of the overpayment under 5 C.F.R. § 831.1403 and the four criteria enumerated in the *OPM Overpayment Guidelines*. Because the Board failed to address the substantial evidence demonstrating that recovery of the overpayment to Kathryn was against equity and good conscience, we *reverse*.

## CONCLUSION

For the foregoing reasons, the Board's decision denying waiver of recovery of the overpayment is *reversed*. Given that Kathryn is entitled to a waiver of recovery of survivor annuity benefits based on detrimental reliance, we need not address the other issues raised by the parties.

## **REVERSED**

### COSTS

Costs awarded to Petitioner.