NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SAMUEL VONZELL GORDON,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2017-1165

---

Petition for review of the Merit Systems Protection Board in No. CH-0845-16-0204-I-1.

---

Decided: May 25, 2017

---

SAMUEL VONZELL GORDON, South Holland, IL, pro se.

JOSEPH ALAN PIXLEY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., PATRICIA M. MCCARTHY.

---

Before NEWMAN, O'MALLEY, and REYNA, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Petitioner Samuel Gordon appeals the final order of the Merits Systems Protection Board ("the Board") affirming a decision of the Office of Personnel Management ("OPM"). *See Gordon v. Office of Pers. Mgmt.* (*Board Order*), 123 M.S.P.R. 574 (2016). The Board concluded that Gordon failed to prove that the recovery of his overpaid benefits from the Federal Employee Retirement System ("FERS") would be against equity and good conscience. For the reasons set forth below, we reverse.

## I. BACKGROUND

Gordon filed a FERS application for immediate retirement and disability retirement benefits in February 2009. OPM notified Gordon in an April 3, 2009, letter that it had approved his application for disability retirement. OPM authorized monthly interim FERS benefits in the amount of approximately 80 percent of his estimated FERS benefits until OPM finished processing his application.

OPM also directed Gordon to apply for Social Security disability benefits and to notify OPM if the Social Security Administration awarded him monthly benefits. OPM explained that Gordon's FERS benefits would be offset by any Social Security disability benefits he received. OPM then stated:

> Because the FERS disability benefit must be reduced by 100 percent of any Social Security benefit payable for 12 months, Social Security checks should not be negotiated until the FERS benefit has been reduced. The Social Security checks will be needed to pay OPM for the reduction which should have been made in the FERS annuity.

*Gordon v. Office of Pers. Mgmt.* (*AJ Decision*), No. CH-0845-16-0204-I-1, 2016 MSPB LEXIS 2622, at *3 (M.S.P.B. May 2, 2016).

Over a three-year period, Gordon received monthly interim payments at three separate rates: (1) $1,118.28 from March 2, 2009, to March 30, 2009; (2) $1,118.00 from April 1, 2009, to November 30, 2011; and (3) $1,147.00 from December 1, 2011, to January 30, 2012. OPM calculated these monthly interim payments based on an assumed payable disability benefit with no reduction for benefits from the Social Security Administration.

Shortly after OPM authorized the monthly interim payments, the Social Security Administration informed Gordon that it had approved his request for benefits, effective April 1, 2009. Gordon thereafter received monthly Social Security payments of $1,984.00. Despite OPM's letter instructing him not to negotiate the Social Security checks, Gordon negotiated the checks and began receiving both the Social Security and interim FERS payments.

Before OPM finalized its review of Gordon's application, it determined in August 2011 that Gordon was not eligible for a FERS disability annuity on his last day of pay, January 30, 2009, because he did not have at least 18 months of creditable civilian service as of that date. OPM concluded that he had 17 months and 27 days of creditable civilian service, leaving him three days short of the 18-month requirement for receiving a FERS disability annuity. Rather than denying Gordon disability retirement entirely, OPM credited his service beyond his last day of pay to February 4, 2009, so that he would meet the minimum service requirement.

Around this time, OPM also informed Gordon that his gross monthly annuity was not sufficient, as of January 1, 2011, to cover all of the voluntarily-elected health and life insurance benefits he received. OPM sent Gordon a new election form for his health benefits and life insurance, but he failed to return the election form. OPM then directed Gordon to pay his Federal Employee Health Benefits premiums.

OPM completed its review of Gordon's application in January 2012, almost three years after approving his application for benefits.  OPM calculated that the actual value of Gordon's annuity before he began receiving Social Security benefits in April 2009 was $1,599.00 per month. After accounting for the $1,984.00 per month that Gordon began receiving from his Social Security benefits in April 2009, however, OPM concluded that Gordon was entitled only to an earned rate annuity of $326.00 per month. Because Gordon had received $1,118.00 per month for almost three years while only being entitled to $326.00 per month, OPM calculated that it had overpaid Gordon by $25,012.90.  OPM also calculated overpayments of $5,191.39 for Gordon's voluntary elections for Federal Employee Health Benefits premiums and $2,923.13 for Federal Employees' Group Life Insurance premiums. OPM therefore determined that Gordon needed to repay $33,127.42 because of OPM's overpayment from April 1, 2009, to January 30, 2012.  OPM developed a repayment plan that would have required Gordon to pay more than 250 monthly installments of $127.96.

Gordon requested reconsideration and submitted a Financial Resources Questionnaire in February 2012.  In August 2014, OPM notified Gordon that it was reviewing his request for reconsideration and requested updated financial information.  Gordon declined to submit an updated Financial Resources Questionnaire, but continued to claim that he was entitled to a waiver of the overpayment amount because of his disability, financial situation, and inability to receive financial assistance from the Veterans Administration and state and local organizations because of the overpayment.

OPM issued its decision on December 28, 2015, three years and ten months after Gordon requested reconsideration.  OPM gave no reason for its delay, merely stating, "[w]e apologize for the delay in responding to your request."  Resp't's App. 55.  In its reconsideration decision,

OPM affirmed the calculated overpayment amount. OPM also concluded that Gordon was not entitled to waiver of the overpayment. OPM concluded, "[a]fter a careful review of the evidence of record," that Gordon was not at fault in causing or contributing to the overpayment, but OPM found that recovery was not against equity and good conscience. Resp't's App. 57. OPM did find, however, that Gordon had shown collection at the scheduled rate would cause financial hardship, so OPM lowered the monthly payments to 662 installments of $50.00 and a final installment of $27.42.

Gordon appealed OPM's decision to the Board. Gordon did not challenge OPM's calculation of the overpayment, and the Administrative Judge ("AJ"), upon review of the record, found that OPM's calculations were correct. The AJ then found that Gordon failed to meet his burden to show that recovery of the overpayment would be against equity and good conscience. The AJ found that Gordon failed to show financial hardship because he declined to submit an updated Financial Resources Questionnaire despite multiple requests from OPM and encouragement to do so from the AJ. According to the AJ, Gordon's reliance on his 2012 submission did not provide sufficient evidence to compare his current monthly income with his claimed expenses. Gordon therefore failed to prove by substantial evidence that collection of the overpayment at $50.00 per month would be a financial hardship.

The AJ then considered whether Gordon had shown he had relinquished a valuable right or changed positions for the worse due to the overpayment. The AJ found that Gordon did not establish a claim for detrimental reliance because he received his letter from the Social Security Administration regarding his entitlement to Social Security benefits only one month after receiving notification from OPM that his FERS disability benefits would be reduced based on his receipt of Social Security benefits.

The AJ also noted that OPM advised Gordon not to negotiate the Social Security benefits until it finalized his disability annuity. According to the AJ, Gordon's failure to heed this warning was an intervening circumstance causing his failure to receive state, local, and Veterans Administration aid because he likely could have qualified for the aid had he not negotiated the Social Security benefits. The AJ therefore found that Gordon had not proven that recovery of the overpayment would be against equity and good conscience based on a relinquishment of a valuable right or a change in position for the worse.

The AJ turned finally to whether Gordon proved his entitlement to waiver of the overpayment based on unconscionability. The AJ acknowledged that OPM "was not a model of expediency in notifying the appellant of the overpayment," but found that the delay of about three years to finalize his annuity was not "so 'monstrously harsh' that recovery of the overpayment would be unconscionable." *AJ Decision*, 2016 MSPB LEXIS 2622, at *22. The AJ also found that Gordon had not demonstrated unique personal circumstances based on his disability because he had not submitted medical evidence supporting the assertion and the AJ found him to be "intelligent, articulate, and in full command of his cognitive capabilities in pursuing this appeal." *Id.* And the AJ found that OPM had not acted with gross negligence in its handling of Gordon's annuity.

Gordon petitioned the Board for review of the AJ's initial decision, but the Board denied the petition and affirmed the AJ's initial decision. The Board did not state that the initial decision was adopted subject to modifications by the Board. *See, e.g.*, *Howard v. Dep't of Transp.*, 117 M.S.P.R. 610, 610 (2012) (adopting the AJ's decision as the Board's final decision "[e]xcept as modified by th[e] Final Order"). Instead, the Board indicated that the AJ's initial decision "is now the Board's final decision." *Board Order*, 123 M.S.P.R. at 574.

Despite the Board indicating that the AJ's initial decision had become the Board's final decision, the Board provided additional reasoning regarding its conclusion that Gordon had not provided any basis for granting his petition for review. The Board based its reasoning on its conclusion that the Set-Aside Rule applied to this case. Because Gordon received OPM's letter discussing the effect of Social Security benefits on his FERS benefits, the Board found that he was "aware of the set-aside requirement and should have anticipated that he was receiving an overpayment that he eventually would need to repay." *Board Order*, 123 M.S.P.R. at 574. The Board also agreed with the AJ's findings that Gordon had not proven by substantial evidence that: (1) he did not receive state and Veterans Administration benefits because of the overpayment, and (2) he would be financially burdened by repaying the overpayment.

Gordon appeals from the Board's final decision. We have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(9).

## II. Discussion

The scope of our review in an appeal from a decision of the Board is limited. We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Fields v. Dep't of Justice*, 452 F.3d 1297, 1301 (Fed. Cir. 2006). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support" the Board's conclusion. *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938).

Gordon argues that the Board erred in failing to waive the collection of the overpayment he received. When the recipient of an overpayment argues that the

overpayment amount should be waived, OPM has the burden of establishing by a preponderance of the evidence that an overpayment occurred. 5 C.F.R. § 845.307(a). The recipient then must establish by substantial evidence that he is eligible for a waiver of the overpayment. *Id.* § 845.307(b).

As an initial matter, Gordon argues that OPM's overpayment calculations are incorrect because they do not account for his service with the Transportation Security Administration. In support, Gordon provides documentation that appears to show he worked as a Transportation Security Officer at O'Hare International Airport. But the AJ explained that Gordon "has not come forward with any evidence or argument that challenged OPM's calculations. Rather, the appellant's argument centers on waiver." *AJ Decision*, 2016 MPSB LEXIS 2622, at *12. In an apparent attempt to excuse his failure to address OPM's alleged miscalculation, Gordon states that the documentation he cites is new evidence that previously was not available to him. But his own documentation shows that he had the information during his appeal and even sent it to OPM in 2011. Because Gordon failed to challenge OPM's calculations before the AJ and he did not produce new evidence, we find that he waived his argument that OPM miscalculated his annuity and overpayment. *See Gant v. United States*, 417 F.3d 1328, 1332 (Fed. Cir. 2005).

Gordon next argues that he is entitled to waiver of the overpayment. OPM's collection of FERS overpayments is subject to 5 U.S.C. § 8346(b), which provides in pertinent part, "[r]ecovery of payments under this subchapter [including FERS annuity benefits] may not be made from an individual when, in the judgment of the Office of Personnel Management, the individual is without fault and recovery would be against equity and good conscience." 5 U.S.C. § 8346(b); *see also* 5 U.S.C. § 8470(b); 5 C.F.R. § 845.301. Recovery is against equity and good conscience if any of the following three conditions are met:

(a) It would cause financial hardship to the person from whom it is sought;

(b) The recipient of the overpayment can show (regardless of his or her financial circumstances) that due to the notice that such payment would be made or because of the incorrect payment he or she either has relinquished a valuable right or has changed positions for the worse; or

(c) Recovery would be unconscionable under the circumstances.

5 C.F.R. § 845.303.

The AJ found, and the Board did not dispute, that Gordon was "without fault" in this case, but the AJ denied Gordon's request for a waiver based on her equity and good conscience analysis. Gordon argues that recovery in this case would be against equity and good conscience because he meets each of the three conditions. After reviewing each of the conditions, we conclude the AJ erred in finding that Gordon had not shown recovery would be against equity and good conscience because recovery of the overpayment under these circumstances would be unconscionable due to OPM's lengthy delays and the impact it had on Gordon's benefits.

## A. Fault

Although the AJ and the Board both found that Gordon was without fault, we briefly address the fault inquiry because of its impact on the reasoning used to support the finding by the AJ and the Board that Gordon failed to prove recovery would be against equity and good conscience. As we explained in *Boyd v. Office of Personnel Management*, 851 F.3d 1309 (Fed. Cir. 2017), the relevant regulations state that a recipient of an overpayment is "without fault if he/she performed no act of commission or omission which resulted in the overpayment." 5 C.F.R. § 831.1402. One of the pertinent considerations when

considering a finding of fault is whether the recipient of an overpayment "accepted a payment which he/she knew or should have known to be erroneous." *Id.* § 831.1402(a)(3).

OPM's published policy guidelines interpreting its regulations further reiterate and explain the fault inquiry. OPM's guidelines state that "an individual is <u>not</u> without fault if," *inter alia*, "he/she accepted a payment which he/she knew to be erroneous[,] or . . . he/she accepted a payment which he/she should have known to be erroneous." Ret. & Ins. Grp., U.S. Office of Pers. Mgmt., *Policy Guidelines on the Disposition of Overpayments under the Civil Service Retirement System and Federal Employees' [sic] Retirement System* ("*Policy Guidelines*"), § I.B.3(c)–(d) (1995). But the guidelines contain an exception under which anyone, even an individual who knows that he is receiving an erroneous overpayment, can automatically be found without fault:

> <u>Prompt Notification Exception</u>. Individuals who accept a payment in excess of the amount to which they are entitled will automatically be found without fault, regardless of whether they knew or should have known that the payment was erroneous, if they promptly contact OPM and question the correctness of the payment. In general, an individual must contact OPM within 60 days of the receipt of the overpayment—i.e., a onetime prompt notification requirement. (Note: This rule provides an exception to the general rules cited above (I.B.3) by allowing certain persons who knowingly accept overpayments to be found without fault if they demonstrate good faith by promptly bringing the overpayments to OPM's attention. However, the fact that they suspected or knew that they had received an overpayment—as evidenced by their contacting of OPM—will have a

bearing on equity and good conscience determina-
tions. See the Set-Aside Rule, guideline I.C.4.)

*Policy Guidelines* § I.B.6.

The Set-Aside Rule, which is referenced by the
Prompt Notification Exception, applies to the equity and
good conscience inquiry. *Boyd*, 851 F.3d at 1313–15.
Although the Set-Aside Rule does not affect the fault
analysis, the outcome of the fault analysis determines the
applicability of the Set-Aside Rule. *See Policy Guidelines*
§§ I.B.6, I.C.4, I.E.7. The Set-Aside Rule states:

> Individuals who are aware that they are receiving
> overpayments are obligated by the principles of
> equity and good conscience to set aside the
> amount overpaid pending recoupment by OPM.
> Thus, *an individual who accepted a payment
> which he/she suspected or knew to be erroneous
> but who is found without fault under the Prompt
> Notification Exception (I.B.6) is obliged to set the
> overpaid money aside pending recovery by
> OPM. . . .* Unless there are exceptional circum-
> stances, recovery by OPM in these cases is not
> against equity and good conscience. (Note: Excep-
> tional circumstances would involve extremely
> egregious errors or delays by OPM—e.g., a failure
> to issue a written decision within 4 years of a
> debtor's request for waiver. [See I.F.1 and I.F.3.]
> Financial hardship is not an exceptional circum-
> stance.)

*Policy Guidelines* § I.C.4 (italicized emphasis added). As
explained by the guideline, the Set-Aside Rule applies to
any individual who accepted a payment that he "suspect-
ed or knew to be erroneous" but was nevertheless found
without fault due to the Prompt Notification Exception.
*Id.*

In this case, there is no indication that the Prompt Notification Exception applies to Gordon. OPM's reconsideration decision, issued on December 28, 2015, merely states, "[a]fter a careful review of the evidence of record, we find that [Gordon is] not at fault in causing or contributing to the overpayment." Resp't's App. 57. OPM's decision makes no reference to the Prompt Notification Exception. The decisions of the AJ and the Board also give no indication that the Prompt Notification Exception applies in this case, and we see no indication in the record that Gordon notified OPM within sixty days of the receipt of an overpayment, as required by *Policy Guidelines* § I.B.6. We therefore conclude that the Prompt Notification Exception does not apply to Gordon.

Because the Prompt Notification Exception does not apply, the decisions of OPM, the AJ, and the Board finding Gordon "without fault" must be based on the underlying conclusions that Gordon (1) did not know his payment was erroneous, and (2) could not have reasonably been expected to know his payment was erroneous.[1] If either of these conclusions were not true, then Gordon would not be without fault under the *Policy Guidelines* because the Prompt Notification Exception, which "provides an exception to the general rules cited above (I.B.3) by allowing certain persons who knowingly accept overpayments to be found without fault . . . ," *Policy Guidelines* § I.B.6, does not apply in this case. *See Policy Guidelines* § I.B.3(c)–(d).

B.  Financial Hardship

Gordon argues that he has burdensome financial obligations caused by his disability and now by the overpay-

---

[1]    A parenthetical note at the end of *Policy Guidelines* § I.B.3 states, "[t]he phrase 'should have known' can be interpreted as 'could have reasonably been expected to know.'"

ment. Gordon asserts that his financial obligations became so great that he was forced to return to work against the advice of his doctor.[2] To demonstrate his financial obligations, Gordon filed a Financial Resources Questionnaire in February 2012. OPM requested that Gordon submit an updated questionnaire in 2014, but he declined to file one. OPM again requested an updated questionnaire while the case was before the AJ. The AJ even encouraged Gordon to submit an updated questionnaire before his hearing and specifically informed him that the AJ would find it difficult to find in his favor on financial hardship grounds without an updated questionnaire. Gordon declined once again.

To show financial hardship, an individual must show that he needs substantially all of his "current income and liquid assets to meet current ordinary and necessary living expenses and liabilities." 5 C.F.R. § 845.304. A pertinent consideration in this determination is the "individual's financial ability to pay *at the time collection is scheduled to be made.*" *Id.* § 845.304(a)(1) (emphasis added). The AJ found that Gordon failed to meet his burden to show financial hardship because he declined to submit an updated questionnaire, which left the AJ without sufficient evidence to compare Gordon's then-current monthly household income with his claimed expenses. Because Gordon's ability to pay at the time of collection is a pertinent consideration in analyzing finan-

---

[2] Gordon appears to allege separately that he was improperly terminated from his positions working for the U.S. Postal Service on three separate occasions when he tried to return to work. As the AJ explained to Gordon, those claims are not relevant to this case. If he desires, Gordon can pursue a claim against his former employers by filing a separate action. *See AJ Decision*, 2016 MSPB LEXIS 2622, at *7.

cial hardship and there is substantial evidence to support
the AJ's conclusion that Gordon failed to show his finan-
cial ability to pay at the time of the appeal, we find no
error in the AJ's consideration of this issue.

C.  Relinquishment of a Valuable Right or
Changed Position for the Worse

Gordon argues that he lost valuable healthcare bene-
fits from the Veterans Administration, Medicare, and
Medicaid because of the overpayment.  He also argues
that he lost nearly all of a $35,000 forgivable home loan
from the State of Illinois because the overpayment falsely
inflated his reportable income to the IRS.

Waiver of an overpayment is justified under § I.E.3 of
OPM's guidelines when the relinquishment of a valuable
right or change in position is:

   a) directly caused by the overpayment or notice
   that such payment would be made (*i.e.*, loss or
   change would not have otherwise occurred);

   b) detrimental to the overpayment recipient;

   c) material (*i.e.*, significant enough to warrant the
   waiver); and

   d) irrevocable (*i.e.*, the forfeited right cannot be
   recovered, the change in position cannot be re-
   versed).

*Policy Guidelines* § I.E.3; *see also King v. Office of Pers.
Mgmt.*, 730 F.3d 1342, 1349 (Fed. Cir. 2013).  But the
*Policy Guidelines* explain that relinquishment of a valua-
ble right or change in position does not warrant a waiver
of an overpayment if the debtor knew or strongly suspect-
ed that the payment was erroneous:

   A debtor's claim that an overpayment caused
   him/her to lose a valuable right or to change posi-
   tions for the worse should be rejected if there is

substantial proof that the debtor knew or strongly suspected that the payment in question was erroneous: e.g., debtor inquired as to correctness of the payment.  See I.C.4.

*Policy Guidelines* § I.E.7.  This limitation on the relinquishment of a valuable right or change in position analysis coincides with § I.C.4—the Set-Aside Rule—because a debtor who is "aware," or who "knew or strongly suspected" (in the language of § I.E.7), that he is receiving overpayments cannot receive a waiver of the overpayment for equity and good conscience "[u]nless there are exceptional circumstances," which do not include financial hardship. *Policy Guidelines* § I.C.4.  In other words, if a debtor was "aware" or "knew or strongly suspected" that he received an overpayment, then the Set-Aside Rule applies and the equity and good conscience analysis hinges on whether exceptional circumstances exist, not the separate factors relating to the inquiries of financial hardship or relinquishment of a valuable right or change of position for the worse.[3]  *See, e.g.*, *Policy Guidelines* §§ I.C.4, I.E.7; *James v. Office of Pers. Mgmt.*, 72 M.S.P.R. 211, 220 (1996) (analyzing a debtor's argument related to a change in position for the worse due to a commitment to buy a new house based on the exceptional circumstances standard,

---

[3]  To be clear, we are not saying that a situation involving loss of a valuable right or a change in position for the worse cannot rise to the level of exceptional circumstances.  Although the Set-Aside Rule specifies that "[f]inancial hardship is not an exceptional circumstance," *Policy Guidelines* § I.C.4, it does not state that a loss of a valuable right or a change in position for the worse cannot create an exceptional circumstance.  We do not offer any further analysis on this issue because, as explained below, the Set-Aside Rule does not apply in this case.

not the factors relating to a change in position for the worse, when the Set-Aside Rule applied).

In her analysis, the AJ appears to have combined the first prong of § I.E.3—direct causation—with the note in § I.E.7 to conclude that Gordon did not qualify for waiver under this condition. The AJ found that Gordon could not show detrimental reliance "when [he] was made aware just one month prior to receiving social security that he should set aside those payments until OPM finalized his case." *AJ Decision*, 2016 MSPB LEXIS 2622, at *18–19. The AJ concluded that Gordon's negotiation of his Social Security benefits despite notice from OPM not to negotiate the benefits "served as an intervening circumstance precluding good-faith reliance to his detriment." *Id.* at *19. The AJ also found that there is "substantial proof in the record that the appellant knew that his FERS annuity payments were subject to reduction upon receipt of" a Social Security benefits award. *Id.* (citing *Policy Guidelines* § I.E.7).

The AJ's analysis on this issue is not supported by substantial evidence and is erroneous. First, to the extent the AJ's analysis relies specifically on the direct causation element of § I.E.3, the AJ's "intervening circumstance" conclusion is not supported by substantial evidence and is otherwise not in accordance with law. The *Policy Guidelines* explain that the direct causation element considers whether the "loss or change would not have otherwise occurred." *Policy Guidelines* § I.E.3(a). The receipt of an overpayment that disqualifies a person from the receipt of benefits he otherwise would have received falls directly within the criteria that the "loss or change would not have otherwise occurred." *Id.* The AJ's attempt to skirt this conclusion because Gordon negotiated his Social Security benefits conflates this element with the fault determination, which had already been made in Gordon's favor. As noted, OPM concluded that Gordon was "without fault," so Gordon's fault should not have come into play at that

point. *AJ Decision*, 2016 MSPB LEXIS 2622, at *14. The AJ's reintroduction of fault during an analysis of § I.E.3(a) is contrary to law.

To the extent the AJ relied on § I.E.7 because Gordon allegedly knew that he was receiving an overpayment, the AJ's conclusion must be erroneous because it contradicts the AJ's previous conclusion that Gordon was without fault. As discussed above, the record provides no evidence that the Prompt Notification Exception applies to Gordon. OPM, the AJ, and the Board also made no indication that the Prompt Notification Exception applies in this case. Because the Prompt Notification Exception does not apply, Gordon must not have known or had a reasonable expectation to know that his payments were erroneous; otherwise, OPM, the AJ, and the Board could not have found him without fault under *Policy Guidelines* § I.B.3(c)–(d). The AJ's contradictory conclusions that Gordon was without fault in this case, which required a conclusion that he did not know or have a reasonable expectation to know that the payments were erroneous, but that he could not satisfy the detrimental reliance criteria because he knew that the payments were erroneous cannot stand.

The Board's characterization of the AJ's decision on this issue as an application of the Set-Aside Rule, *Board Order*, 123 M.S.P.R. at 574, fails for similar reasons.[4] The

---

[4] The AJ did not cite the Set-Aside Rule in her decision. The AJ also did not analyze Gordon's arguments under the Set-Aside Rule, as shown by the AJ not analyzing Gordon's argument under the "exceptional circumstances" standard, which specifically disqualifies financial hardship as an exceptional circumstance, *Policy Guidelines* § I.C.4. Instead, the AJ analyzed Gordon's arguments, including financial hardship, on the merits. *See AJ Decision*, 2016 MSPB LEXIS 2622, at *19. The Board

Set-Aside Rule explains that it applies to "[i]ndividuals who are aware that they are receiving overpayments . . . ." *Policy Guidelines* § I.C.4. It then specifies that it applies to "an individual who accepted a payment which he/she suspected or knew to be erroneous <u>but</u> who is found without fault under the Prompt Notification Exception . . . ." *Id.* As addressed above, the Prompt Notification Exception does not apply, and the conclusion by OPM, the AJ, and the Board that Gordon was without fault must be premised on findings that he did not know and could not have reasonably been expected to know that his payments were erroneous. *See Policy Guidelines* § I.B.3(c)–(d). The Board's conclusion that the AJ "correctly found [that] the appellant [wa]s without fault," *Board Order*, 123 M.S.P.R. at 574, directly contradicts the Board's subsequent conclusion that Gordon was subject to the Set-Aside Rule because he was aware that he was receiving overpayments. *See id.* These contradictory conclusions cannot both stand; given the conclusions of OPM, the AJ, and the Board that Gordon was without

---

denied Gordon's petition for review and adopted the AJ's initial decision as the Board's final decision; the Board did not state that the initial decision was adopted subject to modifications by the Board, as it does in some instances. *See, e.g.*, *Howard v. Dep't of Transp.*, 117 M.S.P.R. 610, 610 (2012) (adopting the AJ's decision as the Board's final decision "[e]xcept as modified by th[e] Final Order"). Because the Board's application of the Set-Aside Rule suffers from the same internal inconsistency as the AJ's analysis of Gordon's arguments, we do not address the effect of the Board affirming the AJ's decision as the final decision without modification but then offering reasoning that clearly departs from that given by the AJ.

fault based on the facts of this case, the Set-Aside Rule could not apply.[5]

Because the decisions of the AJ and the Board on this issue contradict the premise underlying the previous conclusions of the AJ and the Board that Gordon was without fault, we conclude that the decisions are arbitrary, capricious, or otherwise not in accordance with law. We would normally remand the matter to the Board for reconsideration in light of the inconsistent factual findings made and the inconsistent legal theories employed. We need do that, however, because we conclude that the recoupment of the overpayment in these circumstances is otherwise unconscionable.

---

[5]   On this issue, the Board also stated, "[t]here is no evidence that [Gordon] made an effort to inform the VA or the Illinois state authorities, who oversaw the benefits that he sought, that the income that was reported by OPM to the Internal Revenue Service was erroneous, i.e., falsely inflated by OPM's failure to reduce [Gordon's] FERS benefit as of the date of his receiving Social Security benefits." *Board Order*, 123 M.S.P.R. at 574. According to the Board, Gordon would not be entitled to waiver "[a]bsent proof of such effort and a showing that it failed to persuade the VA and the state authorities to allow him the benefits to which he would have been entitled at a lower income level . . . ." *Id.* The government also references this logic in its brief. Resp't's Br. 11–12. But neither the Board nor the government cites any authority for placing this additional burden on Gordon. We find no support in the statute or regulations for the Board's requirement that an individual must show that he tried to convince a state or local agency his income was falsely inflated by overpayments before he can receive waiver of an overpayment based on the loss of other benefits.

### D.  Unconscionability

As the AJ recognized, the Board will waive recovery based on unconscionability only under exceptional circumstances.  *AJ Decision*, 2016 MSPB LEXIS 2622, at *20.  The Board considers "all relevant factors using a 'totality-of-the-circumstances' approach in order to determine whether recovery of an annuity overpayment is unconscionable in a given case." *Aguon v. Office of Pers. Mgmt.*, 42 M.S.P.R. 540, 550 (1989).  Possible circumstances include, *inter alia*, an "exceptionally lengthy delay by OPM in adjusting an annuity," *id.*, or a failure by OPM to respond to a without-fault debtor's request for reconsideration within four years of the debtor's request, *Policy Guidelines* § I.F.3.  A delay of less than four years "does not mean that a finding of inequitable recovery is absolutely precluded"; instead, "it simply means that a delay of less than [four] years will not automatically be presumed to render recovery inequitable." *Id.*  But granting a waiver based on egregious errors or delays "requires a determination that OPM's handling of a case was so offensive—so monstrously harsh and shocking to the conscience—that one's sense of equity forbids recovery." *Id.* § I.F.1.

The AJ concluded that OPM's three-year delay to finalize its calculations for Gordon's benefits, although inexplicable, was not "so 'monstrously harsh' that recovery of the overpayment would be unconscionable . . . ." *AJ Decision*, 2016 MSPB LEXIS 2622, at *22.  The AJ also found that Gordon had failed to demonstrate unique personal circumstances and credited OPM for acting equitably during the delay by extending Gordon's last day of pay by a few days to qualify him for benefits despite its belief that he had not met the 18-month requirement. *Id.* at *22–24.

But the AJ did not address the delay between Gordon's request for reconsideration and OPM's reconsidera-

tion decision. Gordon requested reconsideration of OPM's initial decision on February 10, 2012, but OPM did not issue a decision until December 28, 2015. Resp't's App. 55. OPM provided no reason for its delay; instead, it merely stated, "[w]e apologize for the delay in responding to your request." *Id.* Although this delay does not automatically qualify as an exceptional circumstance under *Policy Guidelines* § I.F.3, it only barely misses that mark and remains an important consideration. *See Aguon*, 42 M.S.P.R. at 550.

In considering the totality of the circumstances, we also acknowledge Gordon's failure to qualify for aid and benefits from state agencies, local agencies, and the Veterans Administration because of OPM's delay in finalizing its calculations. *See AJ Decision*, 2016 MSPB LEXIS 2622, at *19. The AJ recognized that Gordon likely would have qualified for these benefits without the overpayments. *Id.* And the Board did not disagree with that conclusion.

Because of OPM's lengthy delays on two separate occasions, the effect the first delay had on Gordon's inability to qualify for benefits he likely would have received, and the fact that the second delay fell only forty days short of the presumptively impermissible four-year time frame, we conclude that recovery of the overpayment is unconscionable. OPM would have required Gordon to forego nearly $1,200.00 per month (comparing his $1,118.00 FERS interim benefits with the $1,984.00 Social Security benefits and $326.00 earned FERS annuity he was entitled to receive)—a hefty percentage of his income—for almost three years because OPM did not finalize its calculations more quickly.[6] But OPM did not learn from its initial

---

[6] The AJ's belief that Gordon's circumstances are far from unique because they "fit squarely with a great deal of former federal employees who are overpaid on

delay. Instead, OPM waited another three years and almost eleven months to respond to Gordon's request for reconsideration. Although the delayed response to the request for reconsideration does not qualify as automatically inequitable under *Policy Guidelines* § I.F.3, it follows a delay of almost three years to calculate Gordon's annuity. To be clear, we do not endorse a rule that merely adds up multiple delays to conclude that the greater than four-year presumptively unconscionable time period has passed. We simply find that where, as here, there is a wholly unexplained delay of three years and almost eleven months, which followed an earlier three-year delay, and the AJ found both that Gordon was without fault and that Gordon was deprived of the opportunity to pursue and receive other benefits he likely would have received during those delays, the requirements of 5 U.S.C. § 8346(b) have been met, despite the other countervailing considerations addressed by the AJ. Considering the totality of the circumstances, we conclude that OPM's recovery of the $33,127.42 overpayment would be unconscionable.

### III. CONCLUSION

For the foregoing reasons, we reverse the Board's Final Order adopting the AJ's initial decision as the Board's final decision. The Board is directed to instruct OPM to waive recovery of the $33,127.42 claimed as an overpayment.

---

account of interim pay and corresponding social security benefits," *AJ Decision*, 2016 MSPB LEXIS 2622, at *23, creates cause for concern regarding the statutory scheme and OPM's efficiency, especially in addressing disability benefits for veterans such as Gordon. But we are tasked with applying the law, not rewriting it.

## REVERSED

### Costs

No costs.