**Louis L. GROMO, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT,
Respondent.**

**No. 91–3071.**

United States Court of Appeals, Federal Circuit.

Sept. 19, 1991.

Louis L. Gromo, pro se.

Richard E. Rice, Dept. of Justice, Washington, D.C., argued for respondent. Of Counsel were David M. Cohen and Thomas W. Petersen.

Before NEWMAN and PLAGER, Circuit Judges, and MILLER, Senior Circuit Judge.

PLAGER, Circuit Judge.

"All I want is justice." With these words—not often heard so baldly stated in courts of law—Louis Gromo concluded his *pro se* argument. The Government had denied his petition for return of monies which were determined to be deductible, wrongfully, according to Mr. Gromo, from his monthly pension check. The Merit Systems Protection Board (MSPB), although acknowledging the problems created by the Government's mishandling of Gromo's pension, refused relief. We reverse, with directions.

## I. BACKGROUND

Gromo, at the time a widower, retired from his position with the Department of the Army in 1984. He began to receive a Civil Service Retirement System annuity. On December 12, 1985, Gromo remarried. He notified the Office of Personnel Management (OPM) of his remarriage by letter dated October 5, 1986, and expressed his desire for a survivor annuity benefit. OPM responded in November, acknowledged Gromo's request, sent him the required forms, and advised him how much his annuity would be reduced when his election became effective. Gromo completed the required election forms and timely returned them to OPM on or about November 28, 1986.[1]

That the Government, for whatever reasons, did not thereafter handle the matter well is without dispute. On January 7, 1987, the OPM claims-examiner wrote to Gromo, acknowledging receipt of the election form. The examiner apologized for the processing delay, caused by the absence of the examiner due to an illness, and promised to "immediately process" the election upon receiving Gromo's file, which the examiner had requested from OPM's Records Division. While this letter was no doubt well intended, it, coupled with the long delay which then followed before official action was taken on the election request, left Gromo in considerable doubt as to the status of his file.

The next official communique from OPM was not until five months later. In the interim, there ensued a series of communications regarding this request. Some of these were from Gromo to OPM inquiring about the delay.[2] Other communications, according to Gromo, involved getting his congressman to intercede in his behalf.

Then, by letter of June 5, 1987, Gromo was notified that his requested joint annui-

---

1. 5 U.S.C. § 8339(k)(2) (1982), as effective at the time Gromo retired, provided that "[a]n employee ... who is unmarried at the time of retiring ... and who later marries, may irrevocably elect, in a signed writing received in the [OPM] within 1 year after he marries, a reduction in his current annuity [to provide for a survivor

annuity benefit]. The reduced annuity shall be effective the first day of the first month beginning 1 year after the date of marriage."

2. *E.g.,* Gromo's letter dated March 5, 1987, which apparently went unanswered.

ty had become effective, and that his monthly annuity would be reduced by $164 "commencing" as of the previous January 1, 1987. The letter also stated that Gromo's July 1, 1987, check would be the first to reflect the deduction, and that a retroactive adjustment would also have to be collected. However, that letter said that the adjustment would be $102.50; a subsequent communication corrected the adjustment to be $102.50 per month, for eight months—a total of $820.[3]

Gromo protested the retroactive adjustment. He assumed, on the basis of the claims-examiner's letter of January 5, that because his election was yet to be processed, the survivor annuity was not yet in effect. Gromo therefore continued to make payments on four life insurance policies, until he was sure that the benefit was processed and in effect.[4] Gromo requested that OPM waive recovery of the claimed overpayment.

In its reconsideration decision of February 27, 1989, OPM denied the waiver. The decision found that Gromo was not at fault. OPM nevertheless concluded that recovery would not be against equity and good conscience—Gromo had not established that collection in installments would cause financial hardship or that he had changed positions for the worse in reliance on the overpayment.

On appeal to the MSPB, the Initial Decision of the administrative judge (AJ), dated June 7, 1989, concluded that the proposed recovery would not be unconscionable under the circumstances.[5] On December 29, 1989, the full board of the MSPB denied Gromo's petition for review, but reopened the appeal and remanded on the issue of waiver, in light of MSPB cases decided in

the interim. The AJ's remand decision of May 3, 1990 again affirmed the OPM's decision. The administrative judge found in effect that the lack of "affirmative misconduct" on the part of OPM precluded a finding that collection of the overpayment would be unconscionable. The MSPB full board denied Gromo's petition for review, and Gromo brought this appeal.

By way of relief for the Government's delay and allegedly wrongful retroactive adjustment, Gromo demanded in his brief on appeal "a letter of apology and monies reimbursed for time spent well over 300 hours and for parking, tolls, gasoline, stationary, stamps, lunches, premiums on insurance policies, etc., $4000. I became hypertensive and am on medication: Direct cause constant aggravation."

## II. DISCUSSION

■ When reviewing a decision of the MSPB, this court will affirm that decision unless it is found to be:

1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

2) obtained without procedures required by law, rule or regulation having been followed; or

3) unsupported by substantial evidence.

*See* 5 U.S.C. § 7703(c) (1988); *Covington v. Department of Health and Human Services,* 750 F.2d 937, 941 (Fed.Cir.1984).

■ By statute, 5 U.S.C. § 8346(b) (1988), recovery of an overpayment by OPM to an individual must be waived when (a) the individual is without fault and (b) recovery would be against equity and good conscience. The OPM considers recovery

---

3. Further adding to the confusion, as described in the Government's brief, are the following: Gromo's check of June 1, 1987, rather than July 1, 1987, was actually the first scheduled to be reduced; OPM's reconsideration decision stated that the overpayment period was during the first five months of 1986, rather than 1987; and the MSPB's first initial decision suggested that the overpayment period ran for 17 months, rather than 5 months.

4. The evidence established that Gromo kept the policies, which he had taken out before the events at issue occurred, in effect until July of 1987.

5. We note in passing that the OPM regulations state the standard as "... *could* be unconscionable under the circumstances," *see* 5 C.F.R. § 831.1403(a)(3) (1991), whereas both the AJ below and the Government in their brief stated the standard as "*would* be unconscionable ..." (emphases added).

to be against equity and good conscience when

    (1) It would cause financial hardship to the person from whom it is sought;

    (2) The recipient of the overpayment can show (regardless of his or her financial circumstances) that ... because of the incorrect payment either he/she has relinquished a valuable right or changed positions for the worse; or

    (3) Recovery could be unconscionable under the circumstances.

5 C.F.R. § 831.1403 (1991). The recipient of the overpayment has the burden of establishing by substantial evidence that recovery should be waived. 5 C.F.R. § 831.-1407(b).

■ All concede that Mr. Gromo was not at fault in this set of events. The only question is whether equity and good conscience—justice, to use Gromo's term—require a waiver of OPM's claim.[6] In light of the undisputed facts of this case, it is clear that the six month delay in processing Gromo's election should have produced some communication from OPM to Gromo explaining exactly where he stood in the meantime. None issued. The MSPB acknowledged in effect that Gromo's resulting confusion and misunderstanding were reasonable. This confusion led directly to continued expense incurred by Gromo—a foreseeable consequence of the pattern of events, and one which caused him to change position for the worse by continuing costly contractual obligations which, as it turned out, he did not need.

Under these circumstances, the decision by OPM, after backdating the effective date of the annuity change as required by statute, then to demand money back as a result was arbitrary and capricious. Thus the MSPB decision not to waive collection of the overpayment was, in this situation, an abuse of discretion. While the sums involved here are small by Government standards, they are not inconsequential to the individual. Mr. Gromo was not well served by his Government, and whether

that was because of affirmative misconduct or just plain inefficiency is irrelevant.

Not every delay or failure to communicate fully by the Government will entitle a citizen to a remedy—the Government is a large industry and some inconvenience is occasionally inevitable. When, however, there is a problem such as here created wholly by the Government and for which a ready remedy is available—and that remedy is statutorily conditioned on grounds of equity and good conscience—it ill-behooves the Government to deny its error or to fail to mitigate the harm it caused.

### III. CONCLUSION

The decision of the MSPB is reversed. The MSPB is directed to instruct OPM to waive recovery of the $820 claimed as an overpayment.

REVERSED.

---

**6.** While as noted above Gromo in his brief 'counterclaimed' for damages of some $4000, that claim is not properly before us on this appeal from the MSPB.