**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

JAMES D. CAMPBELL,
      Appellant,

    v.

OFFICE OF PERSONNEL
   MANAGEMENT,
      Agency.

DOCKET NUMBER
SF-0845-20-0604-I-1

DATE: January 18, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

James D. Campbell, Phoenix, Arizona, pro se.

Carla Robinson, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which denied his request for waiver of a Federal Employees' Retirement System (FERS) disability retirement annuity overpayment. For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision to find

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

that the appellant is entitled to a partial waiver, and REMAND the case to the Western Regional Office for a determination of the proper waiver amount.

## BACKGROUND

The appellant was a GS-12, step 4 Airplane Flight Instructor for the Department of the Air Force, covered under FERS. Initial Appeal File (IAF), Tab 14 at 35. This is a dual status position, meaning the appellant was required as a condition of his employment to maintain membership in the Selected Reserve. *Id*. at 38; *see* 10 U.S.C. § 10216(a)(1)(A), (C); 32 U.S.C. § 709. The appellant satisfied that requirement through his membership in the Alaska Air National Guard. IAF, Tab 14 at 53. However, on May 17, 2015, the appellant was discharged from military service for medical reasons, and because of his loss of membership in the Selected Reserve, he was separated from his dual status civilian Airplane Flight Instructor position effective July 10, 2015. IAF, Tab 13 at 31-32, Tab 14 at 30. The appellant applied for disability retirement, and the Office of Personnel Management (OPM) granted the appellant's application under the special provisions of 5 U.S.C. § 8456. IAF, Tab 14 at 12. The appellant's annuity commenced September 8, 2015, retroactive to the date of his separation. IAF, Tab 13 at 9.

As OPM informed the appellant at the time of his retirement and each year thereafter, if his earned income in any calendar year were to exceed 80% of the current salary of the position from which he retired, he would be considered restored to earning capacity, and his disability annuity would cease on June 30, the following year. IAF, Tab 15 at 9, Tab 16 at 8-13; *see* 5 U.S.C. § 8455(a)(2); 5 C.F.R. § 844.402(a). On the date of his separation from service, the annual salary of the appellant's Airplane Flight Instructor position was $104,626. IAF, Tab 14 at 30.

The appellant reported his earned income to OPM every year as required, including on March 12, 2019, when he reported his earned income for 2018 as

$100,009. IAF, Tab 13 at 5. Suspecting that his 2018 earned income exceeded the 80% limitation and having heard nothing about it from OPM, in June 2019, the appellant reached out to an OPM official by telephone and left multiple voicemails inquiring about the status of his disability retirement in light of his 2018 earnings. IAF, Tab 3 at 6, 74. However, this official never returned the appellant's calls, and even after the June 30 cutoff date had passed, the appellant continued receiving his regular monthly annuity. IAF, Tab 3 at 6, Tab 12 at 28, Tab 13 at 42.

Then, on January 29, 2020, OPM conducted a "Social Security Earnings Match" on the appellant's file and determined that the appellant's 2018 income had exceeded the 80% limitation. IAF, Tab 12 at 49-52. On February 5, 2020, OPM notified the appellant of its findings and directed him to file certain documentation to verify his 2018 earned income.[2] *Id*. at 39-40. OPM further informed the appellant that his 80% earnings limitation for 2018 was $88,440, and that if his 2018 earned income exceeded that amount, his annuity would be terminated retroactively and he would be responsible for repaying any overpayment. *Id*. at 39-40. On February 14, 2020, the appellant responded, confirming his 2018 earned income and inquiring as to whether any overpayment could be waived under the circumstances. *Id*. at 44-45.

On March 9, 2020, OPM terminated the appellant's annuity retroactive to June 30, 2019. IAF, Tab 12 at 25, 35. On April 7, 2020, OPM informed the appellant that he had been overpaid a net $25,855.65 in disability retirement annuity benefits, which OPM intended to collect. *Id*. at 25. The appellant requested reconsideration, and on July 1, 2020, OPM issued a final decision, affirming its initial decision as to the existence and amount of the overpayment,

---

[2] Unaware that this problem was caused by its own oversight, OPM was under the impression that the appellant had misreported his 2018 earned income. IAF, Tab 12 at 39. In fact, the appellant's self-report of 2018 earned income matched exactly with what OPM belatedly discovered through a search of his Social Security records. IAF, Tab 11 at 5, Tab 12 at 51.

and proposing to collect the overpayment in monthly installments of $250. *Id*. at 5-16.

The appellant filed a Board appeal in which he did not challenge the existence or amount of the overpayment but instead sought a waiver. IAF, Tab 1 at 3-5. He waived his right to a hearing, and the appeal was decided on the written record. IAF, Tabs 23-24.

After the close of the record, the administrative judge issued an initial decision affirming OPM's final decision. IAF, Tab 26, Initial Decision (ID). He found that, although the appellant was without fault in creating the overpayment, there was no basis to grant his request for a waiver because recovery would not be against equity and good conscience. ID at 11-25. The administrative judge noted that the appellant was also attempting to contest OPM's retroactive cancellation of his health insurance, which had caused him to incur thousands of dollars in out-of-pocket healthcare expenses, as well as a statement in OPM's decision letter that he would be ineligible for reinstatement of annuity even if his earned income fell below the 80% limitation in the future. ID at 7, 9; IAF, Tab 3 at 12, Tab 12 at 6. However, the administrative judge found that the Board lacked jurisdiction over these matters in the context of the instant appeal. ID at 9.

The appellant has filed a petition for review, disputing the administrative judge's overpayment waiver analysis, as well as his jurisdictional finding concerning the termination of his health insurance. Petition for Review (PFR) File, Tab 1. OPM has responded to the petition for review, and the appellant has filed a reply to OPM's response. PFR File, Tabs 3-4.

## ANALYSIS

Before proceeding to the issues of overpayment and waiver, we first address the Board's jurisdiction over OPM's decision to terminate the appellant's health insurance coverage. In his initial decision, the administrative judge found that the Board lacks jurisdiction to consider claims concerning Federal employee

health insurance benefits. ID at 9; *see Hudson v. Office of Personnel Management*, 114 M.S.P.R. 669, ¶ 10 (2010). On petition for review, the appellant cites *Chamblin v. Office of Personnel Management*, 112 M.S.P.R. 266, ¶¶ 11-13 (2009), arguing that there are certain exceptions to this general rule, including situations in which the appellant is seeking waiver of an overpayment caused by the retroactive application of insurance premiums. PFR File, Tab 1 at 10-11.

The appellant is correct that the Board may have jurisdiction over health insurance benefits decisions in this context. *See Mitchell v. Office of Personnel Management*, 97 M.S.P.R. 566, ¶ 12 (2004). However, the overpayment in this case did not result from the retroactive application of health insurance premiums, and in fact, OPM reduced the amount of the overpayment by retroactively deducting those premiums from the overpayment amount. IAF, Tab 12 at 25, 28. Moreover, even if this exception did apply, the Board would still lack jurisdiction over OPM's decision on the appellant's health insurance benefits per se and would consider the matter only insofar as it bears on the issue of whether collection of the overpayment would be against equity and good conscience. *See Mitchell*, 97 M.S.P.R. 566, ¶¶ 10-12. We therefore find no basis to disturb the administrative judge's finding that the Board lacks jurisdiction over OPM's decision to retroactively terminate the appellant's health insurance coverage.[3] ID at 9.

Despite finding that the Board lacks jurisdiction over OPM's health insurance benefits decision per se, consistent with the Board's holdings in *Chamblin* and *Mitchell*, the administrative judge went on to consider the consequences of this health insurance decision in the context of waiver. ID

---

[3] Although the appellant does not contest this finding on review, we likewise agree with the administrative judge that the Board lacks jurisdiction to consider whether the appellant's disability retirement could be reinstated if his income were to fall below the 80% limitation in the future. ID at 9; *see* 5 U.S.C. § 1204(h) ("The Board shall not issue advisory opinions.").

at 23-24.  We likewise consider this matter in the context of our waiver analysis below.

OPM bears the burden of proving by preponderant evidence the existence and amount of an annuity overpayment.  *Vojas v. Office of Personnel Management*, 115 M.S.P.R. 502, ¶ 10 (2011); 5 C.F.R. § 1201.56(b)(2)(ii).  Because the appellant was restored to earning capacity as of December 31, 2018, his disability retirement annuity should have ceased effective June 30, 2019.  *See* 5 U.S.C. § 8455(a)(2); 5 C.F.R. § 844.402(a).  Because OPM continued to pay the annuity through February 2020 (eight extra monthly annuity payments), the appellant received an overpayment of annuity.  IAF, Tab 7 at 23; *see Ruskin v. Office of Personnel Management*, 73 M.S.P.R. 544, 547, 551 (1997).  The appellant does not dispute OPM's calculation that the net overpayment amounted to $25,855.65.  IAF, Tab 11 at 9, Tab 12 at 5, 28.  This calculation appears correct on its face, and we find no basis to disturb the administrative judge's finding that OPM proved the existence and the amount of the overpayment.  ID at 10-11.

An overpayment of FERS annuity is subject to recovery under the provisions of 5 C.F.R. part 845, subpart B.  However, recovery of an overpayment may not be made from an individual when, in the judgment of OPM, the individual is without fault and recovery would be against equity and good conscience.[4]  5 U.S.C. § 8470(b); 5 C.F.R. § 845.301.  The appellant bears the burden of establishing his entitlement to a waiver by substantial evidence. 5 C.F.R. §§ 845.307(b), 1201.56(b)(2)(ii).  For the reasons explained in the initial decision, we agree with the administrative judge that the appellant was without fault in causing the overpayment, and OPM does not dispute this finding on

---

[4] The regulatory standards for waiver of overpayments under FERS are substantially similar, and indeed almost identical, to those under the Civil Service Retirement System (CSRS).  *Compare* 5 C.F.R. part 831, subpart N, *with* 5 C.F.R. part 845, subpart C.  We find the case law interpreting the CSRS regulations to be instructive in interpreting the FERS regulations.

review. ID at 12-14. Therefore, the only remaining issue regarding waiver of the overpayment is whether recovery would be against equity and good conscience.

OPM's regulations set forth three circumstances under which recovery would be against equity and good conscience—financial hardship, detrimental reliance, and unconscionability. 5 C.F.R. § 845.303. In this case, the administrative judge found that the appellant was seeking waiver on the bases of detrimental reliance and unconscionability. ID at 17-18. However, he found that the appellant knew or suspected that he was receiving erroneous payments from OPM, and was therefore obligated to set these payments aside pending resolution of the matter. ID at 18-22. Because the set-aside rule applied in this case, the administrative judge found that only exceptional circumstances involving extremely egregious delays or errors by OPM would entitle the appellant to a waiver. ID at 22. The administrative judge considered the nature of OPM's errors, the length of the delays involved in correcting the overpayment, and the circumstances surrounding the appellant's loss of health insurance, but he found that these did not rise to the level of exceptional circumstances that would warrant a waiver of the overpayment. ID at 22-25. The appellant disputes these findings on review.

First, we address the appellant's argument that the set-aside rule should not apply in his case. PFR File, Tab 1 at 5-10. Under section I.C.4 of OPM's Policy Guidelines on the Disposition of Overpayments, an individual who suspects an overpayment and promptly notifies OPM of the matter is required to set the money aside pending recovery by OPM. IAF, Tab 17 at 15; *see Slater v. Office of Personnel Management*, 42 M.S.P.R. 510, 516-17 (1989). This is known as the "set-aside rule," and the collection of money subject to this rule is not against equity and good conscience absent exceptional circumstances involving extremely egregious errors or delays by OPM. IAF, Tab 17 at 15. The appellant argues that the set-aside rule should not apply in his case because it was not reasonable to expect him to calculate the 80% earning limitation, considering that this is OPM's

job and he did not have sufficient information to make an accurate calculation himself. PFR File, Tab 1 at 5-7. He further argues that he acted diligently by inquiring about the matter to OPM, and that he reasonably interpreted OPM's unresponsiveness as an indication that his 2018 income did not exceed the 80% limitation. *Id*. at 7-10.

We agree with the appellant's argument. As the administrative judge correctly found, regardless of whether the appellant should reasonably have suspected that he exceeded the 80% income limitation for 2018, he did in fact suspect this, as evidenced by his own admissions and his follow-up telephone calls to OPM. IAF, Tab 3 at 6, Tab 17 at 15. However, this is not the end of the matter. The appellant's suspicion was not that he had received an overpayment but that he had exceeded the 80% income limitation and that his annuity would therefore be terminated in the future; the appellant had not actually received any overpayment of annuity until the month after he left OPM two voicemails about the situation. In this regard, we find substantial evidence that the appellant acted in a reasonably prudent manner by timely and accurately reporting his 2018 income to OPM and then following up with OPM when he had not gotten notice that his annuity would be terminated. IAF, Tab 3 at 6, 74, Tab 13 at 5.

Furthermore, the appellant reasonably directed his follow-up inquiries to the telephone number listed by the OPM official who had previously responded to the appellant about another matter concerning his disability retirement annuity. IAF, Tab 3 at 74, Tab 12 at 23. Therefore, regardless of what the appellant suspected or should have suspected based on his 2018 income alone, by the time he actually started receiving the annuity overpayment, things had changed because OPM had remained persistently silent about the appellant's annuity status despite his multiple inquiries, thus leading him to believe that there was not any problem with his annuity. As the appellant accurately points out, OPM's Policy Guidelines specifically state that a determination of whether an individual "knew" or "should have known" something should account for "whether OPM failed to

respond to an inquiry by the debtor as to the correctness of payment(s) and, thus, caused the debtor to reasonably believe that the payment(s) was correct." PFR File, Tab 1 at 9, Tab 17 at 11-12. Based on the facts above, we find substantial evidence to support the appellant's claim that, despite his earlier suspicions, OPM's failure to respond to his multiple inquiries led him to reasonably assume that he was still eligible for disability retirement benefits. IAF, Tab 6 at 6-7.

We acknowledge that the appellant could perhaps have done more by persisting in his inquiries to OPM until he received a definitive answer one way or the other. However, this is a level of persistence not required by OPM's Guidelines. IAF, Tab 17 at 12. Furthermore, we find that it would be inappropriate to place such a level of responsibility on a disability retirement annuitant because he is not responsible for administering his own annuity, and he should be entitled to presume that OPM would not likely create an overpayment situation by failing to take note of his income report both when he filed it and when he contacted OPM multiple times to ask about it. For these reasons, we find substantial evidence that, by the time the appellant began receiving an annuity overpayment in July 2019, he no longer reasonably suspected that his annuity was continuing in error, and that the set-aside rule does not apply.[5] *See Wright v. Office of Personnel Management*, 105 M.S.P.R. 419, ¶ 5 (2007).

We emphasize that the appellant's burden of proving entitlement to waiver of an annuity overpayment is by substantial evidence. 5 C.F.R. §§ 845.307(b), 1201.56(b)(2)(ii). This is a lower standard of proof than preponderance of the evidence and is defined as "[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a

[5] The appellant argues in the alternative that, even if the rule applies, waiver is still warranted due to "exceptional circumstances." PFR File, Tab 1 at 16-26; IAF, Tab 17 at 15; *see James v. Office of Personnel Management*, 72 M.S.P.R. 211, 217 (1996) (explaining that collection of monies subject to the set-aside rule may be waived only in exceptional circumstances). Because we have found that the set-aside rule does not apply, we decline to make any findings on this issue. However, we have considered the appellant's arguments in this regard to the extent that they bear on whether collection would be unconscionable under 5 C.F.R. § 845.301(c).

conclusion, even though other reasonable persons might disagree." 5 C.F.R. § 1201.4(p). Even if the evidence could be interpreted another way, that does not mean that the interpretation discussed in paragraphs 17-19 above is not also reasonable. This is all that is required for the appellant to carry his burden on the issue of waiver. *See In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002) ("If the evidence in record will support several reasonable but contradictory conclusions, we will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative.").

Because the set-aside rule does not apply, we now consider whether recovery would be against equity and good conscience under 5 C.F.R. § 845.301, on the bases of financial hardship, detrimental reliance, or unconscionability. *See Harrison v. Office of Personnel Management*, 57 M.S.P.R. 89, 94-95 & n.5 (1993). Regarding financial hardship, although the appellant argues that he has been financially damaged by OPM's delay in terminating his annuity, we do not construe this as an argument that collection of the overpayment would result in "financial hardship" within the meaning of 5 C.F.R. §§ 845.301(a) and 845.304, i.e., that he lacks the means to repay the debt without impoverishing himself. IAF, Tab 17 at 16-19.

Nor do we find that the appellant is entitled to wavier under 5 C.F.R. § 845.301(c) on the basis of unconscionability. Consistent with OPM's Policy Guidelines, the Board has found that the unconscionability criterion is a high standard that will only be met under exceptional circumstances. IAF, Tab 17 at 21-22; *see Aguon v. Office of Personnel Management*, 42 M.S.P.R. 540, 549 (1989). Because the concept of unconscionability is generally defined in terms of broad, equitable considerations, the Board will consider all relevant factors using a "totality-of-the-circumstances" approach in order to determine whether recovery of an annuity overpayment is unconscionable in a given case. *Id*. at 550.

The appellant cites to OPM's multiple failures to take note of his 2018 earnings and its consequent delay in terminating his annuity, as well as OPM's

accusations of fraud and attempts to blame him for the overpayment. PFR File, Tab 1 at 16-29. However, OPM's delay in terminating the appellant's annuity and notifying him of the overpayment was less than a year. IAF, Tab 12 at 25, 35. Although this delay was unfortunate, we find that it was not so egregiously excessive as to meet the high standard of unconscionability in 5 C.F.R. § 845.301(c).[6] *See also Newcomb v. Office of Personnel Management*, 42 M.S.P.R. 552, 554, 559 (finding that OPM's delay of less than 2 years in discovering an overpayment did not render collection unconscionable); *cf. Estate of Konschak v. Office of Personnel Management*, 84 M.S.P.R. 555, ¶¶ 13-14 (1999) (finding that OPM's 22-year delay in discovering an overpayment of more than $100,000 rendered collection of that amount from an 82-year old annuitant unconscionable). As for OPM's recriminations against him, the appellant no doubt found these to be both insulting and frustrating. However, we agree with the administrative judge that there is insufficient basis to conclude that OPM's accusations were knowingly false, and in any event, this error was without consequence to the appeal. ID at 22. The appellant has suffered no tangible harm from OPM's erroneous attribution of fault. Nor do there appear to be any extenuating circumstances such as advanced age or mental disability that might weigh in favor of a finding of unconscionability. For the reasons explained in the initial decision, we agree with the administrative judge that the totality of the circumstances do not support a finding that recovery would be unconscionable under the circumstances.[7] ID at 22-25.

---

[6] In making this determination, we have considered that the delays involved in this case are far shorter than the 4 years necessary to carry a presumption of unconscionability under OPM's Policy Guidelines. IAF, Tab 17 at 22; *see Newcomb v. Office of Personnel Management*, 42 M.S.P.R. 552, 558-59 (1989).

[7] The administrative judge made this finding in the context of his analysis of whether exceptional circumstances existed to warrant waiver of the overpayment notwithstanding the set-aside rule. ID at 22-25. However, under OPM's Policy Guidelines, the standard for waiver notwithstanding the set-aside rule is similar to the standard for waiver based on unconscionability. IAF, Tab 17 at 15, 21-22. Therefore, we find that the administrative judge's analysis was not inconsistent with an analysis of

Nevertheless, for the following reasons, we agree with the appellant that he is entitled to a partial waiver of the overpayment based on detrimental reliance under 5 C.F.R. § 845.301(c). PFR File, Tab 1 at 11-16. Under OPM's Policy Guidelines, detrimental reliance occurs when the overpayment recipient relinquishes a valuable right or changes positions for the worse because of the erroneous payment or because of notice that such payment would be made. IAF, Tab 17 at 19. To justify waiver, the loss of right or change of position must be directly caused by the overpayment or notice of payment, detrimental to the recipient, material, and irrevocable. *Id*. OPM defines "valuable right" as a privilege, claim, entitlement, or benefit that has monetary worth. *Id*. An individual changes positions for the worse when he is left in a worse financial position after recovery than he was prior to his receipt of the overpayment. *Id*. at 20. The concepts of losing a valuable right and changing positions for the worse can often simultaneously apply to the same situation. *Id*.

In this case, we find that the overpayment of annuity directly caused the appellant to relinquish the valuable right of employer-sponsored health insurance. As the appellant explains it, if OPM had notified him in timely manner that his disability retirement benefits were going to be terminated, he would have purchased employer-sponsored health insurance in July 2019. IAF, Tab 6 at 13-14. However, relying on OPM's failure to terminate his annuity and its silence in the face of his multiple inquiries, the appellant believed that his Federal health insurance benefits would continue, and so he did not purchase alternative insurance at that time. *Id*. Believing that he was still covered under Federal health insurance benefits, the appellant continued to incur healthcare expenses over the following months, and his medical bills continued to be paid by his insurance, which had not yet been canceled. Then, when OPM retroactively cancelled the appellant's Federal health insurance benefits on March 9, 2020, his

whether exceptional circumstances existed so as to warrant waiver of the overpayment on unconscionability grounds under 5 C.F.R. § 845.301(c).

former insurer sought reimbursement from providers for all the claims that he had made since August 2019,[8] resulting in $5,451.95 in uninsured healthcare liability for the appellant. IAF, Tab 3 at 12, 51, 62-73.

Furthermore, the appellant has shown that the timing of OPM's actions rendered him unable, as a practical matter, to obtain employer-sponsored health insurance for the 17-month period from between August 2019 and January 2021. IAF, Tab 3 at 7. Specifically, health insurance open enrollment at the appellant's employer occurs in the fall, and coverage begins the following January. PFR File, Tab 1 at 12. To obtain coverage outside that period, an individual must enroll within 31 days of a qualifying life event. IAF, Tab 3 at 13, 53. The appellant's loss of Federal health insurance constituted a qualifying life event, but due to its retroactive nature, the appellant was not apprised of it until well after the 31-day window had passed, and his employer denied the appellant's April 2020 application for out-of-season enrollment for that reason. *Id*. at 54-61. Because the 2019 open enrollment season had already passed by the time OPM informed the appellant about his retroactive loss of coverage, the appellant's next opportunity to enroll with his employer was in the 2020 open season, for coverage beginning January 1, 2021. PFR File, Tab 1 at 12.

Turning to the criteria set forth in OPM's Policy Guidelines for waiver based on the loss of a valuable right, IAF, Tab 17 at 19, for the reasons explained above, we find that employer-sponsored health insurance is a valuable right and that the appellant's decision to forego it is directly attributable to the overpayment of annuity.[9] We also find that the appellant's relinquishment of employer-sponsored health insurance was materially detrimental to his financial

---

[8] This accounts for the June 30, 2019 termination of the appellant's coverage, as well as a 31-day extension that allowed his claims to be covered through July 2019. IAF, Tab 3 at 51.

[9] We note that the appellant's Federal health insurance premiums were paid for by deductions from his disability retirement annuity and that his eligibility for Federal health insurance benefits was inextricably linked to his status as an annuitant. *See* 5 C.F.R. § 890.306(a)(1).

situation because it resulted in a financial loss to him in the form of substantial out-of-pocket medical expenses that would otherwise have been paid by his insurer. We further find that the relinquishment of this benefit is irrevocable, as we are unaware of any mechanism for obtaining retroactive health insurance coverage. We therefore find that the appellant has proven by substantial evidence that he is entitled to waiver under 5 C.F.R. § 845.301(b) on the basis of his loss of a valuable right. IAF, Tab 17 at 19; *see King v. Office of Personnel Management*, 730 F.3d 1342, 1348-51 (Fed. Cir. 2013). Observing that, after collection of the overpayment, the appellant will be left in a worse financial position than if he had never received the overpayment in the first place, we also find that the appellant is entitled to waiver under 5 C.F.R. § 845.301(b) because he has changed his position for the worse. IAF, Tab 17 at 20; *see Gromo v. Office of Personnel Management*, 944 F.2d 882, 884-85 (1991).

Nevertheless, because the appellant's claimed financial losses of $5,451.95 represent a relatively small part of the total overpayment amount, we find that it would be inappropriate to grant a waiver for the entire $25,855.65. According to OPM's Policy Guidelines, the amount of the waiver should depend on the degree to which the individual's position was changed for the worse, and a partial waiver may be granted that appropriately reflects the degree of detrimental reliance. IAF, Tab 17 at 20-21; *see Fearon v. Office of Personnel Management*, 109 M.S.P.R. 606, ¶ 5 (2008). In this case, we find that it would be appropriate to grant a partial waiver of the overpayment, such that the appellant will not realize a windfall but will still not be in a worse financial position due to his loss of health insurance coverage fairly attributable to OPM's error.

Nevertheless, the precise amount of the waiver that should be granted is not clear from the extant record. The appellant below stated that the retroactive termination of his annuity resulted in $5,451.95 in extra uncovered healthcare expenses for him, and he has provided some documentation to substantiate his claim. IAF, Tab 3 at 12, 51, 62-73. However, on petition for review, the

appellant appears to be claiming a total of $5,600 in extra expenses. PFR File, Tab 1 at 14. Furthermore, it does not seem that the appellant deducted from this total the healthcare premiums that he would have otherwise been paying through his employer if OPM had timely notified him of the termination of his annuity. Nor is it clear to us whether the appellant's claimed amount represents only the period of retroactivity or whether it also encompasses uncovered healthcare expenses that he may have incurred between March 9, 2020, and the commencement of his employer-sponsored insurance on January 1, 2021. For these reasons, we find it appropriate to remand this appeal for the administrative judge to take relevant evidence and argument and decide on an appropriate partial waiver amount in the first instance. This might be a rather complex calculation with many factors involved and may require a considerable amount of judgment and discretion. Therefore, the parties are strongly encouraged to cooperate in good faith and, if possible, arrive at a mutually agreeable figure to present to the administrative judge.

## ORDER

For the reasons discussed above, we remand this case to the Western Regional Office for further adjudication in accordance with this Remand Order.

*Jennifer Everling*

FOR THE BOARD: _____
                                 Jennifer Everling
                                 Acting Clerk of the Board

Washington, D.C.